No. 25-20258

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

THE JUNEAU GROUP, L.L.C.
PLAINTIFF – APPELLANT/CROSS-APPELLEE

V.

VENDERA MANAGEMENT HOLDINGS, L.L.C. DOING BUSINESS AS
VENDERA RESOURCES; VR4-MORIA, L.P.
DEFENDANTS – APPELLEES/CROSS-APPELLANTS

BOKF NATIONAL ASSOCIATION, DOING BUSINESS AS BANK OF TEXAS
DEFENDANT – APPELLEE/CROSS-APPELLANT

---

On Appeal from the United States District Court,
Southern District of Texas, No. 4:24-cv-02856
Honorable Charles Eskridge, United States District Judge

---

**BRIEF OF APPELLEE/CROSS-APPELLANT
BOKF, NA**

David W. Leimbach
Jared M. Burden
Patrick Sandman
FREDERIC DORWART, LAWYERS PLLC
124 East 4th Street
Tulsa, Oklahoma 74103
Telephone: (918) 583-9922
dleimbach@fdlaw.com
jburden@fdlaw.com
psandman@fdlaw.com

**Attorneys for Appellee/Cross-Appellant BOKF, NA**

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. **Plaintiff-Appellant/Cross-Appellee The Juneau Group, L.L.C.**:
   The Juneau Group, L.L.C. ("Juneau Group") has no parent corporation or publicly held corporation owning 10% or more of its stock.

2. **Jacob Juneau**:
   Juneau Group was dissolved by affidavit in April 2024 pursuant to Louisiana law. Appellee therefore identifies Jacob Juneau—Juneau Group's sole member who is "personally liable for any debts or other claims against the limited liability company." La. R.S. § 12:1335.1(A).

3. **Defendant-Appellee/Cross-Appellant Vendera Management Holdings, L.L.C. d/b/a Vendera Resources**:
   Vendera Management Holdings, L.L.C. d/b/a Vendera Resources ("Vendera") is believed to have no parent corporation or publicly held corporation owning 10% or more of its stock.

4. **Defendant-Appellee/Cross-Appellant VR4-Moria, L.P.**:
   VR4-Moria, L.P. is believed to have no parent corporation or publicly held corporation owning 10% or more of its stock.

ii

5.  **Defendant-Appellee/Cross-Appellant BOKF, NA**:
    BOKF, NA ("BOKF") is a wholly-owned subsidiary of BOK Financial Corporation, a publicly held corporation. No publicly held corporation owns 10% or more of BOK Financial Corporation's stock.

6.  **Appellate Counsel for Plaintiff-Appellant/Cross-Appellee The Juneau Group, L.L.C**:
    Susan Clouthier
    CLOUTHIER LAW, PLLC

7.  **Trial Counsel for Plaintiff-Appellant/Cross-Appellee The Juneau Group, L.L.C**:
    Jeffrey D. Anderson
    JDA TRIALS LLC

8.  **Trial and Appellate Counsel for Defendants-Appellees/Cross-Appellants Vendera Management Holdings, L.L.C. d/b/a Vendera Resources and VR4-Moria, L.P.**:
    Thomas G. Ciarlone, Jr. and Demetri J. Economou
    KANE RUSSELL COLEMAN LOGAN PC

9.  **Trial and Appellate Counsel for Defendant-Appellee BOKF, NA**:
    David W. Leimbach, Jared Burden, Patrick Sandman, and Chad Thurman
    FREDERIC DORWART, LAWYERS PLLC

    *s/David W. Leimbach*

iii

# STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary because this appeal turns on a straightforward legal issue: whether a Louisiana LLC dissolved by affidavit under La. R.S. 12:1335.1 retains capacity to sue. Louisiana statutory text and uniform Louisiana appellate authority are unequivocal in answering that question. Should the Court desire oral argument, BOKF will appear.

# TABLE OF CONTENTS

Page(s)

CERTIFICATE OF INTERESTED PERSONS.............................................ii

STATEMENT REGARDING ORAL ARGUMENT.................................iv

TABLE OF CONTENTS ...................................................................v

TABLE OF AUTHORITIES............................................................vii

JURISDICTIONAL STATEMENT......................................................1

STATEMENT OF THE ISSUES.........................................................1

STATEMENT OF THE CASE ...........................................................1

   I.  Background ..............................................................................2

   II. Procedural History ................................................................6

SUMMARY OF THE ARGUMENT...................................................11

ARGUMENT.................................................................................12

   I.  The District Court Properly Dismissed Juneau Group's
      Claims..................................................................................12

      A. Standard of Review........................................................13

      B. Juneau Group Lacks Capacity to Sue. .............................15

      C. The District Court Did Not Err by Declining to Abate the
         Case. ...........................................................................17

         1. The District Court Properly Exercised Its Discretion in
            Declining to Abate the Case Indefinitely.............................17

         2. Abatement Would Have Been Futile Because Juneau
            Group Cannot Obtain Retroactive Reinstatement under
            Louisiana Law.............................................................19

         3. The District Court Properly Followed the Erie Doctrine.....25

      D. Louisiana Law Controls. ...............................................27

      E. Certification Is Unwarranted..........................................29

II. The District Court Improperly Denied BOKF Leave to Seek
Fees. ...........................................................................................31

   A. Standard of Review.................................................................31

   B. This Case Should Be Remanded to Allow BOKF to Seek Its
Fees..........................................................................................32

CONCLUSION .................................................................................34

CERTIFICATE OF SERVICE.............................................................36

CERTIFICATE OF COMPLIANCE ......................................................36

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Bailey v. Vanscot Concrete Co.*,
    894 S.W.2d 757 (Tex. 1995) ........................................................ 16

*Batiste v. Lewis*,
    976 F.3d 493 (5th Cir. 2020) ...................................................... 31

*Cader v. Continental Airlines, Inc.*,
    595 F. App'x 293 (5th Cir. 2014) ................................................ 15

*Cambrie Celeste, LLC v. Starboard Mngmt.*, LLC,
    286 So.3d 600 (La. Ct. App. 4th Cir. 2019) ................................. 23

*CenterPoint Energy Houston Elec. LLC v. Harris Cnty. Toll
    Rd. Auth.*, 436 F.3d 541 (5th Cir. 2006) ..................................... 32

*Comancho v. Texas Workforce Com'n*,
    445 F.3d 407 (5th Cir. 2006) ...................................................... 32

*Continental Casualty Company v. McAllen Independent School
    District*, 850 F.2d 1044 (5th Cir. 1988) ................................. 18, 19

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990) ............................................................. 32, 33

*Country Cupboard, Inc. v. Texstar Corp.*,
    570 S.W.2d 70 (Tex. Civ. App.—Dallas 1978) .............................. 28

*Doerr v. Mobil Oil Corp.*,
    774 So.2d 119 (La. 2000) ....................................................... 24, 26

*Echeverry v. Jazz Casino Co., L.L.C.*,
    988 F.3d 221 (5th Cir. 2021) ................................................. 25, 26

*Fruge v. Amerisure Mut. Ins. Co.*,
 663 F.3d 743 (5th Cir. 2011) .......................................................... 27

*Gendusa v. City of New Orleans*,
 635 So.2d 1158 (La. Ct. App. 4th Cir. 1994) ........................... 16, 23

*Griffin v. Oceanic Contractors, Inc.*,
 458 U.S. 564 (1982) ........................................................................ 28

*Gucci 1 Field Servs., LLC v. Reeves*,
 377 So.3d 354 (La. Ct. App. 5th Cir. 2023) ................................... 23

*Guerrera v. United Fin. Cas. Co.*,
 161 F.4th 913, 921 (5th Cir. 2025) ........................................... 29, 30

*Guilbeau v. Hess Corp.*,
 854 F.3d 310 (5th Cir. 2017) .......................................................... 25

*Hardwick v. Brinson*,
 523 F.2d 798 (5th Cir. 1975) .......................................................... 18

*Harrington v. Upchurch*,
 331 So.2d 506 (La. Ct. App. 3d Cir. 1976) .................................... 24

*Hollis v. Hill*,
 232 F.3d 460 (5th Cir. 2000) .......................................................... 28

*Howe ex rel. Howe v. Scottsdale Ins. Co.*,
 204 F.3d 624 (5th Cir. 2000) .......................................................... 25

*J.G.T., Inc. v. Ashbritt, Inc.*,
 450 F. App'x 334 (5th Cir. Aug. 31, 2011) ............................... 16, 19

*Kelly Inv., Inc. v. Continental Common Corp.*,
 315 F.3d 494 (5th Cir. 2002) .......................................................... 14

*Kingman Holdings, L.L.C. v. Chase Home Fin., L.L.C.,*
　　2015 WL 13802564 (W.D. Tex. Apr. 20, 2015) ............................. 16

*Krebs, LaSalle, Lemieux Consultants, Inc. v. G.E.C., Inc.,*
　　197 So.3d 829 (La. Ct. App. 5th Cir. 2016) ................................... 23

*Lasalle v. G.E.C., Inc.,*
　　271 So.3d 328 (La. Ct. App. 5th Cir. 2019) ................................... 23

*Leader Buick, GMC Trucks, Inc. v. Weinmann,*
　　841 So.2d 34 (La. Ct. App. 4th Cir. 2003) .......................... 22, 23, 24

*Machete Prods., L.L.C. v. Page,*
　　809 F.3d 281 (5th Cir. 2015 .................................................... 14, 15

*Murphy v. Uncle Ben's Inc.,*
　　168 F.3d 734 (5th Cir. 1999) ....................................................... 14

*Pocket Billiards v. Affordable Movers,*
　　346 So.3d 399 (La. Ct. App. 4th Cir. 2022) .................. 21, 22, 23, 24

*Prudential Mortg. Capital Co., L.L.C. v. Faidi,*
　　444 F. App'x 732 (5th Cir. 2011).............................................. 14, 18

*In re Reinstatement of S&D Roofing, LLC,*
　　202 So.3d 177 (La. Ct. App. 5th Cir. 2016) ............................. 21, 22

*Robertson v. Weinmann,*
　　782 So.2d 38 (La. Ct. App. 4th Cir. 2001) ............................... 16, 23

*Robinson v. Kimbrough,*
　　652 F.2d 458 (5th Cir. 1981) ....................................................... 34

*Slade v. Louisiana Power & Light Co.,*
　　418 F.2d 125 (5th Cir. 1969) ................................................... 16, 17

*Theriot v. Midland Risk Ins. Co.,*
    694 So.2d 184 (La. 1997) ......................................................... 21, 23

*Thomas v. Capital Sec. Services, Inc.,*
    836 F.2d 866 (5th Cir. 1988) ............................................................ 34

*TS & C Investments LLC v. Beusa Energy, Inc.,*
    344 F. App'x 907 (5th Cir. 2009) ..................................................... 30

*Vo v. Harris Cnty. Comm'rs Ct.,*
    2022 WL 4376714 (Tex. App. Sept. 22, 2022) .............................. 16

## Rules and Statutes

Fed. R. Civ. P. 1 ........................................................................................ 19
Fed. R. Civ. P. 11 ......................................................................7, 10, 31-34
Fed. R. Civ. P. 12(c) ....................................................... 9, 10, 25, 33
Fed. R. Civ. P. 56(d)................................................................................ 15
28 U.S.C. § 1291 ........................................................................................ 1
28 U.S.C. § 1332(a)(1)............................................................................... 1
La. R.S. 12:142.1(B)................................................................................. 22
La. R.S. 12:1308.2(C)............................................................................... 20
La. R.S. 12:1335.1...............................................iv, 6, 11, 12, 16, 20-22
La. R.S. 12:1335.1(A)................................................................................ii
La. R.S. 12:1340(C)................................................................................. 23
La. R.S. 12:1363(E)(2) ............................................................................ 20
La. Civ. Code, Art. 1 ............................................................................... 20
La. Civ. Code, Art. 3 ............................................................................... 20
Tex. Bus. Org. Code § 1.102 .................................................................. 28
Tex. Bus. Org. Code § 9.001(b) ............................................................. 28
Tex. Civ. Prac. & Rem. Code 134A.005 .................................................. 7
Tex. Civ. Prac. & Rem. Code 134A.005(1) ....................................... 32, 33

## Miscellaneous

James L. Dennis, *Interpretation and Application of the Civil Code
    and the Evaluation of Judicial Precedent,*
    54 La. L. Rev. 1, 15 (1993) ........................................................... 26

# JURISDICTIONAL STATEMENT

The District Court properly exercised subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the parties' citizenship is diverse and the amount in controversy exceeds $75,000.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because the District Court entered (i) a final judgment dismissing Juneau Group's claims for lack of capacity to sue and (ii) a minute entry denying BOKF's request for leave to bring a motion seeking attorney fees and costs. ROA.1081–84, 1086.

# STATEMENT OF THE ISSUES

There are two main issues. First, whether the District Court properly dismissed the claims of a Louisiana limited liability company that had been dissolved by affidavit before litigation commenced. Second, whether the District Court erred by denying BOKF leave to bring a motion seeking attorney fees.

# STATEMENT OF THE CASE

The following events provide the relevant factual and procedural context for this appeal—including BOKF's contention that the District Court erred by denying BOKF the *opportunity* to seek fees in light of the

1

vexatious and bad-faith conduct of the dissolved Juneau Group and its sole member, Mr. Jacob Juneau.

## I.    Background

The Juneau Group, L.L.C. was registered as a limited liability company in Louisiana on July 30, 2018. ROA.970. Its sole member, Jacob Juneau, formed the company months after graduating from Louisiana State University in 2018. ROA.970, 919.

Beginning in 2019, Mr. Juneau occasionally contacted bankers at BOKF to explore financing options on oil-and-gas deals. ROA.1206. In February 2019, Mr. Juneau asked BOKF for debt financing on such a deal through a "web inquiry." ROA.1209. BOKF declined Mr. Juneau's request. ROA.1216.

In 2020, Mr. Juneau set his sights on a multi-million-dollar portfolio of oil-and-gas properties being marketed by British Petroleum ("BP"). ROA.164. BP required all bids for its Moria assets to have secured financing or proof of funds. ROA.1270, 1329.

At that time, Mr. Juneau was twenty-six years old and had a net worth of less than two hundred thousand dollars. ROA.1278. Juneau Group had not—and indeed has never—secured financing for an oil-and-

gas deal. ROA.1324. Nevertheless, BP provided Juneau Group with access to its virtual data room containing the details of BP's Moria assets. ROA.264. At the same time, Defendant/Appellee Vendera Resources was also evaluating the Moria assets. ROA.266.

On May 21, 2021, Vendera submitted its initial $22 million secured bid for the Moria Assets to BP. ROA.1326, 1354. On May 25, 2021, Juneau Group submitted a much higher $42.5 million bid without having secured funding. ROA.1287, 1307, 1411. As one BP executive contemporaneously noted, "without secured funding, Juneau's bid [was] dead on arrival." ROA.1285. Vendera later revised its bid to $28 million. ROA.1318.

Weeks after Vendera and Juneau Group submitted their bids to BP, Mr. Juneau contacted a banker in Houston who worked for BOKF to seek financing for Juneau Group's bid. ROA.1279. BOKF and Juneau Group entered into a non-disclosure agreement on June 20, 2021, pursuant to which Mr. Juneau allegedly shared his "confidential bid strategy" with the BOKF banker in Houston. ROA.264–65. BOKF declined Juneau Group's request for financing. ROA.439. BP ultimately rejected Juneau Group's bid for the Moria assets because Juneau Group "did not have

assured financing" and accepted Vendera's bid even though Vendera's bid was substantially lower than Juneau Group's bid. ROA.1319–20, 1329. Later, in connection with closing, Vendera obtained partial financing through BOKF via a relationship with a banker in Dallas; Mr. Juneau admitted he does not know when Vendera first communicated with BOKF about the BP transaction. ROA.1179.

Mr. Juneau claims (falsely) that BOKF stole his "confidential bid strategy" and gave it to Vendera. Mr. Juneau stated "there is no document or discrete set of documents 'consisting of' the entirety of the Juneau Bid Strategy." ROA.567. Nonetheless, Mr. Juneau admitted Juneau Group's bid strategy was "fundamentally different" than Vendera's. ROA.1411–12. Whatever the case may be, Juneau Group's $42.5 million dollar bid was made (i) after Vendera's initial bid; (ii) before Mr. Juneau contacted BOKF; and (iii) without secured financing. ROA.931,1316.

Juneau Group did not close a single oil-and-gas transaction in its six-year operational history. ROA.1324. For the next two years following the failed Moria bid, Mr. Juneau initiated a series of unrelated legal proceedings in multiple state and federal courts seeking extraordinary

monetary relief, often in the millions or billions of dollars. ROA.96–150. As one example, Mr. Juneau initiated an adversary pro se proceeding in bankruptcy court, "as a putative class member," seeking more than $1 billion in damages from American Express and requesting sweeping relief against its executives including their removal and publication of its "cpu code." ROA.96–99, 104. That proceeding was summarily dismissed. ROA.101. Mr. Juneau subsequently asserted several duplicative multimillion-dollar claims in state court, which were likewise dismissed or disallowed. ROA.109–16, 134–35.

By early 2023, as Juneau Group ceased operations, Mr. Juneau was homeless and experiencing new legal troubles. ROA.920–21. On June 28, 2023, he was arrested for two counts of aggravated assault on a police officer and aggravated battery in a public place. ROA.1123, 1497–98, 1543, 1556–57. He thereafter was found mentally unfit to stand trial in a criminal proceeding and was involuntarily committed for treatment before being released into family custody. ROA.1123, 1497–98. Mr. Juneau was then placed on a two-year probation. *Id.*

On November 15, 2023, the Louisiana Secretary of State revoked Juneau Group's registered status for failure to file annual reports for

three consecutive years. ROA.972, 975. On April 21, 2024—approximately three months before this lawsuit was filed—Mr. Juneau voluntarily dissolved Juneau Group by affidavit pursuant to La. R.S. 12:1335.1. ROA.972.

## II.    Procedural History

On July 24, 2024, the dissolved Juneau Group filed a *first* suit in Texas state court against both BOKF and Vendera Resources alleging they had misappropriated Juneau Group's "trade secret" regarding the "potential acquisition" of BP's Moria assets. ROA.17. At the time of filing, Juneau Group had been dissolved for three months, and its sole member, Mr. Juneau, was only some ten months removed from involuntary commitment and a finding of mental unfitness. ROA.1498.

On July 30, 2024, BOKF removed the first suit in Texas state court to the United States District Court for the Southern District of Texas, Case No. 4:24-cv-2821. Later that same day, Juneau Group dismissed its first lawsuit.[1]

---

[1]  BOKF respectfully requests that the Court take judicial notice of the filings and docket in *Juneau Group v. BOKF, NA, et al.*, Case No. 4:24-cv-02821, in the United States District Court for the Southern District of Texas.

Immediately after dismissing its first suit, Juneau Group filed a second suit in Texas state court, this time against Vendera only. ROA.23. On July 31, 2024, Vendera removed Juneau Group's *second* suit in Texas state court to the Southern District of Texas. ROA.16. Juneau Group filed its First Amended Complaint ("FAC") on September 5, re-asserting claims against BOKF for breach of contract and misappropriation of trade secrets. ROA.261. Each of Juneau Group's complaints alleged that Juneau Group "is a foreign limited liability company *previously* registered to do business in the state of Texas." ROA.23, 261 (emphasis added).

From the outset of litigation, Defendants raised concerns regarding both the plausibility of Juneau Group's allegations and its capacity to bring the case. ROA.338, 357, 371. Defendants filed a vexatious litigant warning and asserted a claim for bad faith, seeking attorney fees under the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code 134A.005. ROA.58, 338, 357, 371. BOKF also affirmatively pleaded lack of capacity to sue as a defense. ROA.358. BOKF later sent a safe harbor letter and Rule 11 Motion to Plaintiff's counsel on April 11, 2025,

7

identifying many of the manifest falsehoods in Juneau Group's pleading. ROA.1130.

The history of this case is fraught with obfuscation and delay by Juneau Group. For example, Defendants attempted to schedule Mr. Juneau's deposition several times but it was repeatedly delayed by turnovers in counsel for Juneau Group. Before Mr. Juneau was deposed, at least four different law firms—representing a total of eight attorneys— entered appearances on behalf of Juneau Group and later withdrew. ROA.799, 822. The District Court observed that Mr. Juneau's attorneys "exited in a way that indicated there were real concerns about this case." ROA.1144–45.

For example, just one day before Mr. Juneau's deposition was scheduled to occur, Juneau Group's attorneys of record at the time filed an "emergency motion" to withdraw. ROA.799–807. Their motion attached a declaration of James McCormack, the former General Counsel and Chief Disciplinary Counsel of the State Bar of Texas, opining that the firms' immediate withdrawal was justified and stating that he had "urged them to do so." ROA.806. Remarkably, Juneau Group kept finding

8

new lawyers willing to replace its old ones—notwithstanding all the glaring red flags.

Juneau Group also failed to provide verified interrogatory answers, withheld responsive documents, never produced a privilege log, and asserted boilerplate objections to nearly all discovery requests. ROA.1030–31. Although the District Court ordered Juneau Group to comply with its discovery obligations, Juneau Group violated those orders by failing to provide complete and accurate responses and responsive documents. ROA.1081, 1030.

Finally, Juneau Group submitted false and misleading filings with "gross misrepresentations," including fabricated and AI-generated legal authority. ROA.935, 943. The District Court determined that Juneau Group relied on fabricated authority and characterized the submissions as an attempt to "perpetrate a fraud on the Court," further describing Juneau Group's litigation conduct as "abusive." ROA.1126, 1143.

On April 24, 2025, less than six months after filing its answer, BOKF filed a Rule 12(c) motion for judgment on the pleadings. ROA.949. BOKF's motion relied on certified public records obtained from the Louisiana Secretary of State establishing that Mr. Juneau had

voluntarily and purposefully dissolved Juneau Group by affidavit three months prior to filing his lawsuit. ROA.970–77. In response, Juneau Group did not dispute any of BOKF's facts, nor did it argue that it had capacity to file or maintain suit. Instead, Juneau Group asserted that it had initiated proceedings seeking judicial reinstatement in Louisiana state court on May 23, 2025—a month *after* BOKF filed its Rule 12(c) motion. Juneau Group asked the District Court to abate proceedings pending a determination of the collateral state court action.[2] ROA.1039–40.

On June 16, 2025, the District Court held a hearing on Juneau Group's discovery violations, litigation misconduct, and BOKF's Rule 12(c) motion. ROA.1112. At the hearing, the court found that Juneau Group had been dissolved by affidavit before the action commenced and dismissal was appropriate based on Juneau Group's lack of capacity to sue. ROA.1143. The court also orally granted BOKF leave to seek attorney fees under Rule 11, the court's inherent authority, and to pursue "other sanctions." ROA.1142–46. Later that day, the District Court filed

---

[2]  To this day, some **sixteen months** after BOKF raised lack of capacity as an affirmative defense in its answer, Juneau Group still remains dissolved and has not been reinstated.

a Minute Entry that abruptly withdrew BOKF's permission to seek fees, stating that "satellite litigation in this regard won't be entertained." ROA.1083. Final Judgment was then entered dismissing Juneau Group's claims and this appeal followed. ROA.1086–93.

## SUMMARY OF THE ARGUMENT

The pleadings and judicially noticed facts establish that Juneau Group had been dissolved by affidavit under Louisiana law before initiating litigation. Under Louisiana's civil law regime, beginning with the statutory text and confirmed by *jurisprudence constante*, La. R.S. 12:1335.1 extinguishes an LLC's inchoate claims upon dissolution by affidavit, and reinstatement cannot revive them. The District Court properly dismissed Juneau Group's claims and declined to abate proceedings because the company lacked capacity to sue when the lawsuit was filed and could not cure this fatal defect.

The District Court erred, however, in denying BOKF the *opportunity* to seek attorney fees. Fee entitlement is a collateral matter under federal law, and the court's findings of abusive conduct and fabricated authority entitled BOKF to at least present a fee motion.

11

# ARGUMENT

## I.    The District Court Properly Dismissed Juneau Group's Claims.

This Court should affirm the District Court's dismissal of Juneau Group's claims because Juneau Group lacked capacity to sue. Louisiana law is dispositive: a dissolved LLC cannot sue, and reinstatement cannot revive extinguished claims under La. R.S. 12:1335.1.

Juneau Group offers new arguments wholly inconsistent with Louisiana statutory text and uniform Louisiana appellate interpretation. Those new arguments do not change the simple reality that Louisiana law extinguished Juneau Group's capacity before filing suit. Juneau Group's brief loses sight of the forest for the trees. The key points remain undisputed:

- In April 2024, Mr. Juneau dissolved Juneau Group by filing an affidavit of dissolution with the Louisiana Secretary of State.

- In July 2024, Juneau Group commenced suit.

- Then, after being put on formal notice of the capacity issue, Juneau Group waited more than six months before it even *started* the process of seeking reinstatement of its status as a Louisiana limited liability company.

Juneau Group hopes that a Louisiana court *might* someday enter an order enabling Juneau Group to be reinstated as a limited liability company in Louisiana. Juneau Group also hopes that—contrary to Louisiana law as applied in numerous Louisiana appellate decisions—such reinstatement *might* somehow be deemed retroactive. Juneau Group further hopes that, after obtaining reinstatement in Louisiana, it *might* someday be able to obtain revival of its status as a foreign limited liability company in Texas. All that so Juneau Group can try to cure a self-inflicted and fundamental defect in the lawsuit that it chose to bring against BOKF. And, in the meantime, Juneau Group expects BOKF to sit idly on its hands—subject to ever-increasing legal expenses and indefinite delay—while Juneau Group tries to fix a problem entirely of its own making. The District Court acted well within its authority in denying Juneau Group's unreasonable request for such extraordinary accommodations.

## A. Standard of Review

Juneau Group asserts that the appropriate standard of review is *de novo* because this is an appeal of a judgment on the merits made under Fed. R. Civ. P. 12(c). Juneau Group is correct about the standard of

review insofar as this appeal involves the merits of BOKF's 12(c) motion. *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015). Juneau Group did not, however, oppose BOKF's motion on the merits. Indeed, Juneau Group essentially conceded it lacked capacity to sue. Juneau Group instead asked the District Court to abate proceedings while Juneau Group pursued reinstatement in Louisiana.

A motion to abate is, in effect, a request to stay proceedings. *See Prudential Mortg. Capital Co., L.L.C. v. Faidi*, 444 F. App'x 732, 736 (5th Cir. 2011). "A district court's decision to stay a proceeding is generally reviewed for abuse of discretion." *Kelly Inv., Inc. v. Continental Common Corp.*, 315 F.3d 494, 497 (5th Cir. 2002) (citing *Murphy v. Uncle Ben's Inc.*, 168 F.3d 734, 737 (5th Cir. 1999); *see also Cont'l Cas. Co. v. McAllen Indep. Sch. Dist.*, 850 F.2d 1044, 1047 (5th Cir. 1988) (affirming district court's denial of plea in abatement noting "[a]batement . . . is discretionary").

This Court should therefore apply two different standards of review on Juneau Group's appeal: the District Court's grant of BOKF's Rule 12(c) motion should be reviewed *de novo* while the District Court's denial of Juneau Group's request for abatement should be reviewed for abuse of

14

discretion. *Cf. Cader v. Continental Airlines, Inc.*, 595 F. App'x 293, 298 (5th Cir. 2014) ("when challenges to a Rule 56(d) motion and a motion for summary judgment are both lodged on appeal, we review the grant of summary judgment *de novo* and the denial of the Rule 56(d) motion for an abuse of discretion").

### B.    Juneau Group Lacks Capacity to Sue.

Judgment on the pleadings is appropriate if material facts are not in dispute and a judgment on the merits can be rendered based on the substance of the pleadings and any judicially noticed facts. *Machete*, 809 F.3d at 287. The key facts that were established by the pleadings and judicially noticed facts below are not in dispute. On April 21, 2024, Jacob Juneau, as the sole member of Juneau Group, filed an affidavit to dissolve with the Louisiana Secretary of State. ROA.970–77. That same day, the Louisiana Secretary of State issued a certificate of dissolution. ROA.987. Juneau Group filed this action three months later. ROA.23, 261.

"Following dissolution of the corporation by affidavit, neither the individual shareholders nor the dissolved corporation possessed the right to bring an action for the inchoate claims of the corporation." *Robertson*

15

*v. Weinmann*, 782 So.2d 38, 43 (La. Ct. App. 4th Cir. 2001) (quoting *Gendusa v. City of New Orleans*, 635 So.2d 1158, 1163 (La. Ct. App. 4th Cir. 1994)).[3] Louisiana's dissolution-by-affidavit statute (La. R.S. 12:1335.1) contains no provision allowing retroactive reinstatement. By contrast, other Louisiana dissolution statutes expressly authorize retroactivity. Under Louisiana's civil law interpretive rules (La. Civ. Code arts. 1–4), that omission is intentional and controlling: reinstatement under 12:1335.1 cannot revive an LLC's extinguished claims.

Because Juneau Group indisputably dissolved itself before suit, its claims were extinguished immediately, and no Louisiana authority permits revival. *See J.G.T., Inc. v. Ashbritt, Inc.*, 450 F. App'x 334, 335 (5th Cir. Aug. 31, 2011) (affirming summary judgment on the grounds that plaintiff corporation, which was administratively dissolved prior to filing suit, lacked capacity to sue); *Slade v. Louisiana Power & Light Co.*,

---

[3] The same result would obtain under Texas law. *Bailey v. Vanscot Concrete Co.*, 894 S.W.2d 757, 759 (Tex. 1995) ("Civil suits may be maintained only by or against parties having an actual or legal existence."); *see also Vo v. Harris Cnty. Comm'rs Ct.*, 2022 WL 4376714, at *3 (Tex. App. Sept. 22, 2022) (same); *Kingman Holdings, L.L.C. v. Chase Home Fin., L.L.C.*, 2015 WL 13802564, at *2 (W.D. Tex. Apr. 20, 2015) (same).

418 F.2d 125, 126 (5th Cir. 1969) (affirming trial court dismissal where, under Louisiana law, plaintiff lacked capacity to sue).

## C. The District Court Did Not Err by Declining to Abate the Case.

Juneau Group does not dispute the facts that warranted dismissal. Instead, Juneau Group contends that the District Court should have abated proceedings to allow Juneau Group to pursue reinstatement. The District Court acted well within its discretion in declining to abate proceedings while Juneau Group litigated collateral issues in Louisiana state court. Moreover, Juneau Group's stated reason for seeking abatement—to obtain *retroactive* reinstatement to pursue its claims—is not permitted under Louisiana law, as the District Court correctly recognized.

### 1. The District Court Properly Exercised Its Discretion in Declining to Abate the Case Indefinitely.

Juneau Group has not cited a single authority supporting the proposition that the District Court abused its discretion by declining to abate proceedings while Juneau Group's founder attempted to reinstate the company. Instead, Juneau Group argues that reinstatement in Louisiana requires a judicial hearing in Louisiana state court. Even

17

assuming that is true, it does not follow that the District Court erred simply because it declined to abate proceedings indefinitely.

A determination of a question in the nature of abatement "rests in the sound discretion of the district court." *Hardwick v. Brinson*, 523 F.2d 798, 800 (5th Cir. 1975). In *Continental Casualty Company v. McAllen Independent School District*, 850 F.2d 1044 (5th Cir. 1988), the defendant school district was being sued in state court by a student. The school district's insurer filed a federal declaratory judgment action regarding the school district's coverage. The school district asked the federal court to abate the declaratory judgment action pending resolution of the same issue in state court. "Because the issue presented to the federal court was straight-forward," the Fifth Circuit had no difficulty finding that the district court's discretionary decision to deny abatement was not an abuse of discretion. *Id.* at 1047; *see also Prudential Mortg. Capital Co., L.L.C. v. Faidi*, 444 F. App'x 732, 736–37 (5th Cir. 2011) (not abuse of discretion to deny abatement pending determination of issues related to a co-signor on a promissory note in Florida bankruptcy case).

As in *Continental Casualty*, Juneau Group is attempting to abate a federal court action in favor of a state court action. Unlike *Continental*

18

*Casualty*, however, the action that Juneau Group seeks to abate was commenced by Juneau Group before the state court action. In short, there is no reason why Juneau Group, as master of its complaint, should be allowed to delay indefinitely a ruling in federal court on a straightforward issue in light of federal rules that should be construed "to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Simply put, Juneau Group has not—and cannot—establish that the District Court abused its discretion in denying Juneau Group's request to abate, and on that basis alone, the District Court's decision should be affirmed.

> **2.   *Abatement Would Have Been Futile Because Juneau Group Cannot Obtain Retroactive Reinstatement under Louisiana Law.***

There is no abuse of discretion when a district court refuses to entertain a party's futile act. In *J.G.T., Inc. v. Asbhritt, Inc.*, 450 F. App'x 334 (5th Cir. 2011), the plaintiff corporation filed suit after dissolution. The defendants filed a motion for summary judgment on the plaintiff's lack of capacity, after which the plaintiff took steps to be reinstated and asked the district court to allow it to re-file the original complaint to cure the capacity defect. The district court denied the request and granted

19

summary judgment, finding that the plaintiff lacked capacity and could not obtain retroactive reinstatement. On these facts, the Fifth Circuit found "no basis to conclude that the district court abused its discretion by denying [the plaintiff's] motion to amend the complaint." *Id.* at 335. Abatement in this case would be similarly futile because any reinstatement of Juneau Group will not be retroactive under Louisiana law.

In Louisiana's system of civil law, both statute and custom have binding effect. La. Civ. Code, Art. 1. "Custom results from practice repeated for a long time and generally accepted as having acquired the force of law." La. Civ. Code, Art. 3.

Juneau Group was dissolved by affidavit pursuant to La. R.S. 12:1335.1. ROA.976. This statute also addresses reinstatement, stating that "[t]he secretary of state shall reinstate a limited liability company that has been dissolved pursuant to this Section only upon receipt of an order issued by a court of competent jurisdiction directing him to do so." *Id.* at (B). While some statutes governing *other* types of dissolution allow for retroactive reinstatement, *see* La. R.S. 12:1308.2(C) and 12:1363(E)(2), the statute governing dissolution by affidavit—La. R.S.

20

12:1335.1—is silent on the matter. "[W]hen the legislature specifically enumerates a series of things, the legislature's omission of other items, which could have been easily included in the statute, is deemed intentional." *Theriot v. Midland Risk Ins. Co.*, 694 So.2d 184, 187 (La. 1997).

Louisiana courts uniformly hold under the civil law regime, statutory text, and *jurisprudence constante* that reinstatement after dissolution by affidavit under La. R.S. 12:1335.1 is never retroactive. For example, in *Pocket Billiards v. Affordable Movers*, 346 So.3d 399 (La. Ct. App. 4th Cir. 2022), a plaintiff sought to amend his petition to pursue inchoate claims that had belonged to a limited liability company dissolved by affidavit. The Louisiana appellate court denied the request, finding that such an amendment would be a "vain and useless act" given that the company's reinstatement would not be retroactive. *Id.* at 405. The same result was reached in *In re Reinstatement of S&D Roofing, LLC*, 202 So.3d 177, 184–85 (La. Ct. App. 5th Cir. 2016), where a Louisiana appellate court analyzed La. R.S. 12:1335.1 under the aforementioned principles of statutory construction and concluded that a

21

Louisiana limited liability company dissolved by affidavit could not be retroactively reinstated.[4]

Both *S&D Roofing* and *Pocket Billiards* in turn cited well-settled Louisiana case law explicating a nearly identical statute related to the dissolution of corporations.[5] These cases are best exemplified by *Leader Buick, GMC Trucks, Inc. v. Weinmann*, 841 So.2d 34 (La. Ct. App. 4th Cir. 2003), where a corporation that had been dissolved by affidavit attempted to pursue claims in litigation. The dissolved corporation obtained retroactive reinstatement so it could pursue its claims. The defendants objected and obtained an order invalidating the retroactive reinstatement. The appellate court affirmed, holding:

> [W]hile La. R.S. 12:142.1(B) allows for reinstatement of the corporation after dissolution by affidavit, there is no public policy or statutory

---

[4] Juneau Group cites *S&D Roofing* for the proposition that there are few decisions related to La. R.S. 12:1335.1, but fails to mention that *S&D Roofing*, along with all the cases it cites and that follow it, hold that reinstatement is not retroactive. More to the point, Juneau Group has not identified a single Louisiana opinion finding that reinstatement retroactively revives claims that were inchoate at the time of the filing of an affidavit of dissolution.

[5] La. R.S. 12:142.1 provided for the dissolution of corporations by means of an affidavit. While that statute has since been repealed, its language was substantively identical to that found in the statute governing Juneau Group's dissolution, La. R.S. 12:1335.1. *See S&D Roofing,* 202 So.3d at 181 (interpreting 12:1335.1 in light of 12:142.1's "near identical language").

> provision which permits the reinstatement to be retroactive and grants the revival of the corporation's inchoate claims. As such, Leader Buick does not have a right of action against the defendants for the breach of the purchase agreement. Leader Buick's claims against the defendants were extinguished when the corporation was dissolved by affidavit. The reinstatement of the corporation did not revive its claims against the defendant. Thus, the trial court correctly maintained the defendants' exception of no right of action.

*Id.* at 38. This reasoning has been validated numerous times. *See Gendusa*, 635 So.2d 1158; *Robertson*, 782 So.2d at 42; *Krebs, LaSalle, Lemieux Consultants, Inc. v. G.E.C., Inc.*, 197 So.3d 829, 832–33 (La. Ct. App. 5th Cir. 2016); *Cambrie Celeste, LLC v. Starboard Mngmt.*, LLC, 286 So.3d 600, 602–04 (La. Ct. App. 4th Cir. 2019); *Lasalle v. G.E.C., Inc.*, 271 So.3d 328, 337 (La. Ct. App. 5th Cir. 2019).[6]

In short, the statute at issue does not provide for retroactive reinstatement, an intentional legislative decision that is dispositive of the issue. *Theriot*, 694 So.2d at 187. Moreover, the foregoing cases

---

[6] Under La. R.S. 12:1340(C), a dissolved LLC may participate in lawsuits that were filed *before* dissolution, but Louisiana's courts have gone to great lengths to distinguish permissible lawsuits brought before dissolution from impermissible lawsuits brought after dissolution. *See Gucci 1 Field Servs., LLC v. Reeves*, 377 So.3d 354, 362–63 (La. Ct. App. 5th Cir. 2023) (approving of the holding in *Pocket Billiards* while allowing a dissolved LLC to move forward with a lawsuit filed *before* dissolution).

represent a "series of actions constantly repeated" by the Louisiana appellate courts holding that the language of the statute by which an LLC may be dissolved by affidavit does not allow for retroactive reinstatement. *Harrington v. Upchurch*, 331 So.2d 506, 511 (La. Ct. App. 3d Cir. 1976). This "uninterrupted acquiescence" by Louisiana appellate courts has thus risen to the level of customary law. *Id.*; *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 129 (La. 2000). Accordingly, it would be binding in a Louisiana court.

Because the applicable statute forecloses retroactivity and the jurisprudence is unbroken, any Louisiana reinstatement order could not revive Juneau Group's extinguished claims. Abatement would therefore be legally futile. As *Leader Buick*, *Pocket Billiards*, and every other case that has addressed this issue teach, Juneau Group's claims were lost the moment the entity was dissolved by affidavit and they cannot be revived through retroactive reinstatement.[7] The District Court did not abuse its

---

[7] Notably, Mr. Juneau testified he learned about the purported factual basis for Juneau Group's claims *before* he filed an affidavit to dissolve the company. ROA.1350 ("[I] decided to dissolve it because [counsel] said, it's all right. You can dissolve it and still file suit."); *see also* ROA.1231–32, 1335, 1345, 1488–89.

discretion by refusing to abate proceedings while Juneau Group pursued improbable relief in state court.

> 3. *The District Court Properly Followed the Erie Doctrine.*

The District Court properly applied Louisiana customary law in granting BOKF's Rule 12(c) motion. But even if, *arguendo*, the foregoing law has not risen to the level of binding custom in Louisiana, the District Court correctly decided the issue by making a valid "*Erie* guess" as to how the Louisiana Supreme Court would rule, particularly with Louisiana appellate decisions being unanimous, homogenous, and consistent with civilian interpretive canons. *Guilbeau v. Hess Corp.*, 854 F.3d 310, 311 (5th Cir. 2017).

Louisiana's appellate courts are an appropriate source for ascertaining state law, and their decisions and rationale are not to be disregarded by federal courts unless the federal court is persuaded that the Louisiana Supreme Court would decide otherwise. *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000). To make an "*Erie* guess," relevant state appellate decisions are reviewed to determine whether there is a reliable basis to predict state law. *Echeverry v. Jazz*

*Casino Co., L.L.C.*, 988 F.3d 221, 228 (5th Cir. 2021). Here, a consistent line of cases provides just such a reliable basis.

Juneau Group argues that—because Louisiana follows *jurisprudence constante* rather than *stare decisis*—the opinions of the Louisiana appellate courts are not binding to determine whether Juneau Group's reinstatement would be retroactive. Appellant's Brief, p. 16. But even under *jurisprudence constante*, such a constant stream of uniform and homogenous rulings still carries "considerable persuasive authority." *Doerr*, 774 So.2d at 128 (quoting James L. Dennis, *Interpretation and Application of the Civil Code and the Evaluation of Judicial Precedent*, 54 La. L. Rev. 1, 15 (1993)).

Because the Louisiana decisions are unanimous in their refusal of retroactive reinstatement in such circumstances, the District Court's *Erie* guess was well grounded. Therefore, even if the cited Louisiana appellate decisions have not risen to the level of binding custom, the District Court's denial of Juneau Group's request for abatement should be affirmed.

## D.    Louisiana Law Controls.

In its appellate brief, Juneau Group argues in the alternative that the District Court erred by applying Louisiana law, rather than Texas law, to the potential revival of Juneau Group's claims. Even if Juneau Group's claims could be revived under Texas law somehow, Juneau Group waived this argument on appeal because it never argued below that Texas law overrides Louisiana law on the capacity issue. Instead, Juneau Group expressly agreed that Louisiana law controls as to Juneau Group's capacity and potential reinstatement. ROA.1041–48. Accordingly, Juneau Group has waived such choice-of-law arguments on appeal. *See Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743, 747 (5th Cir. 2011) (failure to argue in district court that another state's law applies waives choice-of-law argument on appeal).

More to the point, Texas statutes governing foreign-entity authorization cannot revive a Louisiana entity that Louisiana law deems dissolved and devoid of capacity. Further, the Texas law relied on by Juneau Group governs the reinstatement of a foreign company for failure to pay Texas franchise taxes. If a foreign company has been dissolved in its home state, however, it cannot be authorized to do business in Texas

27

regardless of whether it pays Texas franchise taxes. *See* Tex. Bus. Org. Code § 9.001(b) (requiring a foreign entity to maintain registration in its home state). Simply put, if a company stands dissolved in its home state, it cannot be registered as a foreign entity in Texas. To hold otherwise would leave us with the corporate law equivalent of Schrodinger's cat—a company that is both dead and alive at the same time. The law abhors such absurdities. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("interpretations of a statute which would produce absurd results are to be avoided").

Finally, the capacity to sue under Texas law for a foreign entity is "determined by the laws of the state in which the [entity] was created." *Country Cupboard, Inc. v. Texstar Corp.*, 570 S.W.2d 70, 72 (Tex. Civ. App.—Dallas 1978, writ ref'd n.r.e.). Texas follows the internal affairs doctrine, recognizing that the rights and powers of a limited liability company are governed by the laws of the jurisdiction of formation. *See* Tex. Bus. Org. Code § 1.102; *cf. Hollis v. Hill*, 232 F.3d 460, 464–65 (5th Cir. 2000) (finding that Texas would apply the laws of the jurisdiction of incorporation to a corporation). Therefore, Juneau Group's capacity to

28

sue is governed by Louisiana law, even in the eyes of a Texas court. Juneau Group's argument should be rejected.

### E.    Certification Is Unwarranted.

In its final gambit, Juneau Group asks this Court to certify a question to the Louisiana Supreme Court. The Fifth Circuit applies three factors when deciding whether to certify: (1) the closeness of the question and the existence of sufficient sources of state law; (2) the degree to which considerations of comity are relevant in light of the particular issue and case to be decided; and (3) practical limitations of the certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court. *Guerrera v. United Fin. Cas. Co.*, 161 F.4th 913, 921 (5th Cir. 2025). Here, these factors weigh against certification.

As an initial matter, the underlying procedural issue—whether the District Court erred by declining to abate Juneau Group's lawsuit—was left soundly to the discretion of the District Court under federal principles of law. Stated differently, the District Court's denial of Juneau Group's request for indefinite abatement would have been appropriate *even if* Louisiana law allowed retroactive reinstatement. Accordingly,

there is no need to definitively resolve the question of whether, under Louisiana law, an LLC dissolved by affidavit can be reinstated retroactively. This particular procedural posture both (i) lessens the degree to which considerations of comity are relevant and (ii) poses challenges in framing the issue so as to produce a helpful response on the part of the Louisiana Supreme Court.

More to the point, the state law question is not close. For certification to be appropriate, the question must be "genuinely unsettled," and "the absence of a definitive answer from the state supreme court on a particular question is not sufficient to warrant certification." *TS & C Investments LLC v. Beusa Energy, Inc.*, 344 F. App'x 907, 909–10 (5th Cir. 2009).

As explained above, Louisiana law on this issue is well-settled— based as it is on the straightforward interpretation of statutory language under established principles of construction, as well as numerous appellate decisions uniformly applying such language. *Cf. Guerrera*, 161 F.4th at 921 (finding that question of Louisiana law was not close, notwithstanding "a dearth of authority" on the particular issue, where "the plain language, rules of statutory interpretation, other statutes, and

state court cases all point in one direction."). Accordingly, "the concomitant delay in certification is undeniable and unnecessary." *Id.*

The Court should not delay this matter further by seeking a determination from the Louisiana Supreme Court of a question of limited significance and near certain outcome.

## II. The District Court Improperly Denied BOKF Leave to Seek Fees.

The District Court erred by summarily foreclosing BOKF's ability to seek fees despite (i) a pleaded fee claim under TUTSA, (ii) a properly served Rule 11 letter that satisfied the Rule's safe-harbor requirements, (iii) findings that Juneau Group engaged in abusive litigation conduct and relied on fabricated legal authority, and (iv) prior oral permission to pursue fees and seek other sanctions.

### A. Standard of Review

The District Court's denial of BOKF's request for leave to bring a motion seeking attorney fees should be reviewed *de novo*, as the District Court's decision did not properly address whether BOKF could satisfy the legal standard to pursue fees under TUTSA, Rule 11, or the Court's inherent authority. *Cf. Batiste v. Lewis*, 976 F.3d 493, 507 (5th Cir. 2020) ("Whether the district court applied an incorrect legal standard in

awarding fees is a question of law reviewed de novo."). Indeed, the District Court did not even allow BOKF the *opportunity* to demonstrate its entitlement to fees—creating a due process issue.

Alternatively, at minimum, the District Court's summary denial of BOKF's request should be reviewed for abuse of discretion. *Comancho v. Texas Workforce Com'n*, 445 F.3d 407, 409 (5th Cir. 2006); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."); *CenterPoint Energy Houston Elec. LLC v. Harris Cnty. Toll Rd. Auth.*, 436 F.3d 541, 550 (5th Cir. 2006) (vacating and remanding on attorney fees where district court had issued a "summary order" denying further relief).

## B.    This Case Should Be Remanded to Allow BOKF to Seek Its Fees.

BOKF identified several potential bases for a fee award. Most notably, TUTSA expressly authorizes an award of fees when a misappropriation claim is brought in bad faith. Tex. Civ. Prac. & Rem. Code § 134A.005(1). BOKF also served Juneau Group with a Rule 11 safe-harbor letter and unfiled motion for sanctions on April 11, 2025.

ROA.1130. During the hearing on BOKF's Rule 12(c) motion, the District Court stated that BOKF could file a motion seeking fees. ROA.1143–46. In its subsequent minute entry, however, the court abruptly withdrew that permission—concluding (*sua sponte* and without allowing BOKF an opportunity to respond) that at least a portion of the fees "could have been avoided" had BOKF moved for dismissal earlier. ROA.1083. The District Court prematurely shut the door on a fee motion by stating that "satellite litigation in this regard won't be entertained." ROA.1083.

Sanctions and fee-shifting determinations are collateral to the merits and may be imposed even after dismissal on the basis of threshold defects. *Cooter*, 496 U.S. at 395 (allowing Rule 11 sanctions to be sought post-dismissal because "it is well established that a federal court may consider collateral issues after an action is no longer pending"). Moreover, TUTSA does not condition fee entitlement on whether a prevailing party might have incurred lesser fees through a different litigation strategy; it turns on whether the misappropriation claim was brought in bad faith. Tex. Civ. Prac. & Rem. Code 134A.005(1).

In light of Juneau Group's egregious litigation conduct—including asserting fabricated claims, relying on non-existent legal authority, and

violating multiple discovery orders—BOKF should have been afforded an *opportunity* to seek its fees under the proper legal standards. *Cf. Robinson v. Kimbrough*, 652 F.2d 458 (5th Cir. 1981) (reversing district court's refusal to award fees mandated by civil rights statute); *Thomas v. Capital Sec. Services, Inc.*, 836 F.2d 866 (5th Cir. 1988) (vacating denial of sanctions and remanding for consideration and imposition of Rule 11 sanctions where district court indicated a Rule 11 violation occurred but refused to impose sanctions).

Because the District Court denied BOKF an *opportunity* to seek fees based on an erroneous legal premise and without adequately addressing Juneau Group's bad-faith conduct, the proper remedy is reversal and remand so that BOKF may pursue its fees under the correct legal standards.

## CONCLUSION

BOKF respectfully urges the Court to (i) affirm the District Court's judgment dismissing Juneau Group's claims, (ii) reverse the District Court's denial of BOKF's request for leave to move for fees, and (iii) remand the case to allow BOKF to pursue a fee award.

Respectfully submitted,

*s/David W. Leimbach*

David W. Leimbach
Jared M. Burden
Patrick Sandman
FREDERIC DORWART, LAWYERS PLLC
124 East 4th Street
Tulsa, Oklahoma 74103
Telephone: (918) 583-9922
dleimbach@fdlaw.com
jburden@fdlaw.com
psandman@fdlaw.com

**Attorneys for Appellee/
Cross-Appellant BOKF, NA**

35

## CERTIFICATE OF SERVICE

I certify that, on February 2, 2026, the foregoing Brief was filed electronically using the Court's CM/ECF system, which will give notice of the filing to Appellant's counsel.

*s/David W. Leimbach*

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1, this document contains 6,628 words.

2.     This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook typeface for text and 13-point Century Schoolbook typeface for footnotes.

*s/David W. Leimbach*