**No. 25-20258**

---

## In the United States Court of Appeals
## for the Fifth Circuit

---

### THE JUNEAU GROUP L.L.C.,

*Plaintiff-Appellant/Cross-Appellee*,

*v.*

### VENDERA MANAGEMENT HOLDINGS, L.L.C.,
### doing business as VENDERA RESOURCES,
### VR4-MORIA, L.P., and BOKF NATIONAL ASSOCIATION,
### doing business as BANK OF TEXAS,

*Defendants-Appellees/Cross-Appellants.*

---

Appeal from the United States District Court
for the Southern District of Texas, Houston Division,
No. 4:24-cv-02856 (Hon. Charles R. Eskridge, III)

---

## BRIEF OF VENDERA APPELLEES AND CROSS-APPELLANTS

---

KANE RUSSELL
COLEMAN LOGAN PC
5151 San Felipe, Suite 800
Houston, Texas 77056
TELEPHONE 713 425.7400
FAX 713 425.7700

Thomas G. Ciarlone, Jr.
*tciarlone@krcl.com*

Demetri J. Economou
*deconomou@krcl.com*

Drew Robertson
*drobertson@krcl.com*

***Attorneys for Appellees/Cross-Appellants Vendera Management
Holdings, LLC d/b/a Vendera Resources, and VR4-Moria, LP***

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.  **Plaintiff-Appellant/Cross-Appellee**
    **The Juneau Group LLC**:
    The Juneau Group LLC has no parent corporation or publicly held corporation owning 10% or more of its stock.

2.  **Jacob Juneau**:
    Juneau Group was dissolved by affidavit in April 2024 pursuant to Louisiana law. Appellees therefore identify Jacob Juneau—The Juneau Group LLC's sole member who is "personally liable for any debts or other claims against the limited liability company." La. R.S. § 12:1335.1(A).

3.  **Defendant-Appellee/Cross-Appellant**
    **Vendera Management Holdings, LLC**
    *d/b/a* **Vendera Resources**:
    Vendera Management Holdings, LLC *d/b/a* Vendera Resources has no parent corporation or publicly held corporation owning 10% or more of its stock.

4.  **Defendant-Appellee/Cross-Appellant VR4-Moria, LP**:
    VR4-Moria, LP has no parent corporation or publicly held corporation owning 10% or more of its stock.

5. **Defendant-Appellee/Cross-Appellant BOKF, NA:**
   BOKF, NA is a wholly-owned subsidiary of BOK Financial Corporation, a publicly held corporation. No publicly held corporation owns 10% or more of BOK Financial Corporation's stock.

6. **Appellate Counsel for Plaintiff-Appellant/Cross-Appellee The Juneau Group LLC:**
   Susan Clouthier
   Clouthier Law, PLLC

7. **Trial Counsel for Plaintiff-Appellant/Cross-Appellee The Juneau Group LLC:**
   Jeffrey D. Anderson
   JDA Trials LLC

8. **Trial and Appellate Counsel for Defendants-Appellees/Cross-Appellants Vendera Management Holdings, LLC *d/b/a* Vendera Resources and VR4-Moria, LP:**
   Thomas G. Ciarlone, Jr., Demetri J. Economou, and Drew Robertson
   Kane Russell Coleman Logan PC

9. **Trial and Appellate Counsel for Defendant-Appellee BOKF, NA:**
   David W. Leimbach, Jared Burden, Patrick Sandman, and Chad Thurman
   Frederic Dorwart, Lawyers PLLC

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument is unlikely to aid the Court significantly because this appeal centers on a relatively straightforward legal issue—*i.e.*, whether public records can be sealed—which the Court can adequately decide on the briefs. If, however, the Court wishes to hear oral argument, Vendera welcomes the opportunity to speak.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................i

STATEMENT REGARDING ORAL ARGUMENT................................................iii

TABLE OF CONTENTS ................................................................iv

TABLE OF AUTHORITIES ................................................................v

I.    STATEMENT OF THE ISSUE................................................1

II.   STATEMENT OF THE CASE ................................................2

III.  SUMMARY OF THE ARGUMENT ................................................12

IV.   ARGUMENT................................................14

A.    Standard of Review: Abuse of Discretion ................................................14

B.    Balancing Test and Initial Presumption ................................................14

C.    *Van Waeyenberghe* and *Sealed Search Warrants*: Examples of the
      Two Forms of Abuse of Discretion Recognized by the Fifth Circuit ..........16

D.    Criminal Records in Civil Cases ................................................22

E.    Specific Sealing Issue on Cross-Appeal ................................................26

V.    CONCLUSION ................................................30

CERTIFICATE OF COMPLIANCE................................................32

CERTIFICATE OF SERVICE ................................................33

# TABLE OF AUTHORITIES

## CASES

*Armendariz v. United States*,
No. MO–07–CR–180, 2012 WL 13110021
(W.D. Tex. Sept. 24, 2012) ......................................................................... 23

*Baltimore Sun Co. v. Goetz*,
886 F.2d 60 (4th Cir. 1989) ................................................................... 20–21

*Binh Hoa Le v. Exeter Fin. Corp.*,
990 F.3d 410 (5th Cir. 2021) ....................................... 12, 15, 18, 21, 24, 26–27

*Coursey v. Broadhurst*,
888 F.2d 338 (5th Cir. 1989) ...................................................................... 22

*Ferrari v. Francis*,
685 F. Supp. 3d 410 (N.D. Tex. 2023) .................................................... 22–23

*Green v. Bock Laundry Mach. Co.*,
490 U.S. 504 (1989) .................................................................................. 22

*Heinsohn v. Carabin & Shaw, P.C.*,
832 F.3d 224 (5th Cir. 2016) ...................................................................... 14

*In re Gee*,
No. 19–30953, 2019 WL 130697384
(5th Cir. Nov. 27, 2019) ............................................................................ 24

*In re Violation of Rule 28(d)*,
635 F.3d 1352 (Fed. Cir. 2011) ................................................................... 13

*June Medical Services, L.L.C. v. Phillips*,
22 F.4th 512 (5th Cir. 2022) ..................................................14–16, 21, 26–29

*Nixon v. Warner Commc'ns, Inc.*,
435 U.S. 589 (1978) .................................................................................. 14

*OJ Commerce, LLC v. KidKraft, Inc.*,
　34 F.4th 1232 (11th Cir. 2022) ............................................... 12–13

*Perez-Guerrero v. U.S. Att'y General*,
　717 F.3d 1224 (11th Cir. 2013) ....................................................... 13

*Romero v. Drummond Co.*,
　480 F.3d 1234 (11th Cir. 2007) ...................................................... 13

*Seattle Times Co. v. Rhinehart*,
　467 U.S. 20 (1984) ......................................................................... 13

*Sec. & Exch. Comm'n v. Van Waeyenberghe*,
　990 F.2d 845 (5th Cir. 1993) .......................... 14, 17–21, 23–24, 26–28

*Shane Grp. v. Blue Cross Blue Shield of Mich.*,
　825 F.3d 299 (6th Cir. 2016) ......................................................... 24

*United States v. Holy Land Foundation for Relief and Development*,
　624 F.3d 685 (5th Cir. 2010) ........................................................ 20

*United States v. Sealed Search Warrants*,
　868 F.3d 385 (5th Cir. 2017) ......................... 16–17, 19–21, 23–24, 26–29

*Vantage Health Plan, Inc. v. Willis–Knighton Med. Ctr.*,
　913 F.3d 443 (5th Cir. 2019) ........................... 14–16, 21, 26–29

## RULES

Fed. R. Civ. P.
　26(c) .......................................................................................... 18

Fed. R. Evid.
　609(a)(1) ................................................................................... 22

# I.

## <u>STATEMENT OF THE ISSUE</u>

Notwithstanding this Circuit's clear admonitions to the contrary, can a District Court seal information that is publicly available, including through court records, government websites, and open records requests?

## II.

## <u>STATEMENT OF THE CASE</u>

Vendera joins in the brief filed today by BOKF, and to minimize duplicative briefing, adopts BOKF's arguments and supplements them as follows.

⁂

Juneau is a defunct, one-man company.[1] Ostensibly, Juneau invested in oil-and-gas assets, but it never closed a deal—not even one. The company's sole principal and only employee was Jacob Juneau, who ran his business variously out of his mother's house and his one-bedroom starter apartment. Juneau's headquarters, as listed on the company's letterhead, was a rented mailbox at a UPS store in a strip mall.

In the recent past, including around the time he was preparing to file his lawsuit against Vendera and BOKF, Mr. Juneau has been: (1) involuntarily committed; (2) charged with assaulting a police officer; and (3) found unfit to stand trial. ROA.1122–23 (Tr. at 11:8–15; 11:16–12:14).

---

[1] References to "Juneau" are to Plaintiff-Appellant, The Juneau Group, LLC; references to "Vendera" are to Defendants-Appellees/Cross-Appellants VR4-Moria, LP and Vendera Management Holdings, LLC *d/b/a* Vendera Resources; and references to "BOKF" are to Defendant-Appellee/Cross-Appellant BOKF, NA. References to "ROA.___" are to pages of the record on appeal. References to "Br.___" are to pages of Juneau's opening brief.

The *sealed* record on appeal contains a bevy of *public* information about the foregoing. By way of example only:

①   An "Incident & Investigation Report" for an arrest which was the subject of felony proceedings in Grundy County, Illinois, which was obtained through a public records request. ROA.1554–59.

②   A "Reporting Officer Narrative" for the same arrest, obtained through the same public records request. ROA.1560.

③   A "Case Supplemental Report" for the same arrest, obtained through the same public records request. ROA.1563–67.

④   "Notices of Arrest Without Warrant" for the same arrest, obtained through the same public records request. ROA.1568–69.

⑤   A "Voluntary Statement of Witness" for the same arrest, obtained through the same public records request. ROA.1570.

⑥   Bodycam footage of the same arrest, obtained through the same public records request. ROA.1577.

⑦   More bodycam footage of the same arrest, obtained through the same public records request. ROA.1579.

⑧   Further bodycam footage of the same arrest, obtained through the same public records request. ROA.1581.

⑨   "Dispatch Notes" for an entirely different arrest—this time by the Illinois State Police—obtained through another public records request. ROA.1633–35.

⑩   A "Field Report" for this second arrest, obtained through the same public records request. ROA.1636–41.

⑪ A "Notice of Arrest Without Warrant," obtained through the same public records request. ROA.1645.

⑫ A mugshot, obtained through the same public records request. ROA.1647.

⑬ The docket sheet from the felony criminal case involving Mr. Juneau, filed June 29, 2023, obtained from the Public Records of the Circuit Court Clerk of Grundy County, Illinois, *State v. Jacob S. Juneau*, No. 2023CF208. ROA.1497.

⑭ Court records from *In re Kabbage, Inc. d/b/a KServicing*, No. 22-10951-CTG, United States Bankruptcy Court, District of Delaware. ROA.1500, 1516.

⑮ Court records from *The Juneau Group, LLC v. American Express International*, No. 23SV000132, Superior Court of Hall County, Georgia. ROA.1520.

⑯ Court records from *The Juneau Group, LLC v. Kabbage, Inc.*, No. 23-50371-CTG, United States Bankruptcy Court, District of Delaware. ROA.1526.

⑰ Vendera's motion for a psychiatric examination of Mr. Juneau and the appointment of a guardian ad litem to act on his behalf, a motion that marshalled the preceding public documents and other evidence for the District Court's consideration. ROA.1155.

⑱ Vendera's supplement to its motion for a psychiatric examination and the appointment of a guardian ad litem, marshalling further public documents and evidence for the District Court's consideration. ROA.1537.

⑲ Vendera's second supplement to its motion for a psychiatric examination and the appointment of a guardian ad litem, marshalling still further public documents and evidence for the District Court's consideration. ROA.1627.

㉚   Vendera's reply in further support of its motion for a psychiatric examination and the appointment of a guardian ad litem, again discussing public documents and evidence. ROA.1742.

If the allegations in the live complaint are credited, Mr. Juneau—a then 27-year-old, recent college graduate with virtually no assets, whose company had never closed a single deal, and who had been institutionalized after he attacked a random stranger and then a responding police officer, and who was ultimately found mentally unfit to stand trial—had against all odds assembled $42.5 in financing to bid for oil-and-gas properties that BP America Production Company ("BP") had been publicly marketing. ROA.564 (Doc. 57–1: Answer to Interrogatory No. 3).

After Vendera emerged as the successful bidder for the same properties, in part with financing obtained through BOKF, Juneau sued both Vendera and BOKF—alleging that the latter had leaked to the former Juneau's allegedly "confidential bid strategy." ROA.262–67 (Doc. 15: 1st Am. Compl. at ¶¶ 7–27). As detailed in BOKF's brief, however, nothing could be further from the truth: (1) Vendera's bid was submitted before Juneau ever even contacted BOKF about the BP assets; (2) Mr. Juneau himself admitted under oath that Juneau's bid strategy was "fundamentally different" than Vendera's; and, regardless, (3) BP has stated in contemporaneous writings that Juneau's bid was "dead on arrival" because it had failed to secure firm financing.

Notably, the instant appeal is not Mr. Juneau's first rodeo. He is, by any measure, a serial litigant. In 2022, Mr. Juneau began filing bankruptcy claims and *pro se* lawsuits that were not only frivolous, but also so bizarre and hyperbolic as to suggest that he had experienced a break with reality. On November 28, 2022, for example, Mr. Juneau filed six duplicative $11 million secured claims on behalf of The Juneau Group (a company with approximately $10,000 in annual revenues) in six jointly-administered bankruptcy cases. ROA.1500 (exemplar Proof of Claim filed by The Juneau Group in *In re Kabbage, Inc. d/b/a KServicing*, No. 22-10951-CTG, United States Bankruptcy Court, District of Delaware, publicly available as Claim 91). Mr. Juneau alleged that these claims were "secured by a lien on property," carried an 8% fixed interest rate, and enjoyed priority status because they were attributable to "wages, salaries, or commissions" that he had earned from the debtors. *Id.* Mr. Juneau presented no support for his claims, which were unsurprisingly disallowed.

On December 6, 2022, in the same bankruptcy proceeding, Mr. Juneau filed an administrative claim for $499,999.99 or, alternatively, $20,833 per month. ROA.1516 (Administrative Expense Claim filed by The Juneau Group in *In re Kabbage, Inc.*, No. 22-10951-CTG, United States Bankruptcy Court, District of Delaware, publicly available as Doc. 345). In support of its claim, Mr. Juneau stated

only that The Juneau Group "manufactures, among other things, for industry" and that, in the twenty days prior to the debtor's petition, it had sold to the debtor certain goods that Mr. Juneau described opaquely as "TIME." *Id.* Mr. Juneau filed nothing further in support of the claim, which was disallowed on April 12, 2024. (In addition to constituting perjury, filing a fraudulent bankruptcy claim is a crime carrying a fine of up to $500,000 and up to five years' imprisonment. 18 U.S.C. §§ 152, 157 & 3571.)

On February 21, 2023, The Juneau Group filed a complaint in Georgia state court against American Express, seeking: (i) $1.56 billion dollars in damages; (ii) the "removal of executives of American Express International indefinitely without pay"; and, perhaps most strangely, (iii) "judgement [*sic*] for evidence of 'technology' at American Express International in the form of cpu code to be published digitally within 3 hours." ROA.1520 (Complaint in *The Juneau Group, LLC v. American Express International*, No. 23SV000132, Superior Court of Hall County, Georgia, publicly available in the Clerk of Court's Records, and also as Doc. 1002-1 in the *Kabbage, Inc.* bankruptcy). This was a sworn filing, which Mr. Juneau made under oath subject to penalties of perjury. *Id.* The Juneau Group was ordered to obtain counsel on January 11, 2024. Plaintiff disregarded the court's directive, and the matter was dismissed on March 28, 2024, just months before Mr. Juneau filed

the case at bar against Vendera and BOKF.

On April 24, 2023, Mr. Juneau filed another lawsuit: an adversary proceeding against American Express in the Bankruptcy Court. ROA.1526 (Adversary Complaint filed by The Juneau Group in *The Juneau Group, LLC v. Kabbage, Inc.*, No. 23-50371-CTG, United States Bankruptcy Court, District of Delaware, publicly available as Doc. 1). He sought: (i) $1.56 billion dollars in damages; (ii) the "immediate" removal of the company's executives; and, incoherently enough, (iii) "judgement [*sic*] for evidence of 'technology' at American Express International which was acquired, within a 24-48-hour period." *Id.* Mr. Juneau alleged that American Express's actions were "materially criminal" and, for reasons he never explained, violated the Fourteenth Amendment. *Id.* The case was subsequently dismissed for lack of prosecution on October 16, 2023.

In this proceeding, Juneau's litigation conduct has been nothing short of chronically abusive. Mr. Juneau's deposition, for example, was delayed time and again by turnovers in counsel for Juneau. At least four law firms and eight attorneys entered appearances for Juneau—only to abruptly withdraw under suspect circumstances. ROA.525, 799. The District Judge emphasized that Juneau's attorneys "exited in a way that indicated there were real concerns about this case." ROA.1144–45 (Tr. at 33:24–34:1).

For instance, on the eve of Mr. Juneau's deposition, as the defense team had already begun traveling from multiple cities to question him, Juneau's then attorneys of record filed a so-called "emergency motion" to withdraw. ROA.799–807. James McCormack, the former General Counsel and Chief Disciplinary Counsel of the State Bar of Texas, submitted a declaration in support of this eleventh-hour motion. He concluded that the lawyers' immediate withdrawal was required under the Texas Disciplinary Rules of Professional Conduct. ROA.806. Critically, the rule cited by Mr. McCormack addresses the disturbing scenario in which a client demands that its attorney engage in unethical or illegal conduct.

Lastly, Juneau filed false and misleading pleadings, including fake and AI-generated authorities that were rife with "gross misrepresentations." ROA.935, 943. The District Court held that Juneau had submitted bogus cases and characterized its submissions as an attempt to "perpetrate a fraud on the Court"; the trial judge did not mince words when he described Juneau's litigation conduct as "abusive." ROA.1126, 1143.

**⁎**

Despite all of this—the multiple arrests, the violent criminal conduct, the history of mental health problems, the litany of spurious lawsuits, and the frauds and gross misrepresentations visited on the District Court—the unsealed portions of the

– 9 –

docket tell only a small fraction of the story. The general public sees just the tip of the iceberg. The details about Mr. Juneau's sordid past, and all of the source materials substantiating them, have been placed under wraps—even though virtually all of it is public information that was obtained from public sources. By contrast, what the American people do see—unedited, unredacted, and unabridged—are all of Juneau's salacious allegations against Vendera and BOKF, accusing these companies (and the good people who work there) of all manner of fraudulent, deceitful, and dishonest conduct.

This state of affairs is wrong and fundamentally unfair. Setting aside the basic truism that judicial records do not belong in sealed tombs because they belong to the American people, telling just one side of the story leaves Vendera and BOKF profoundly prejudiced. These companies trade on their reputations. Vendera's entire business is dependent on earning the trust and respect of large private investors, including pension funds and other entities that simply cannot do business with investment firms if there is so much as a hint of scandal or impropriety.

In short, the blunderbuss sealing of public records here is not only irreconcilable with binding Fifth Circuit's precedent, it denies the public—including the press and Vendera's and BOKF's customers and clients—access to a full and complete public judicial record that includes the entire narrative, including to the

many parts that Mr. Juneau—notwithstanding their truth and their availability through official public sources—may find embarrassing, undignified, or inconvenient. But neither shame nor even humiliation is a recognized basis for sealing public documents. And if he was not prepared to have a light shined onto himself and his past, Mr. Juneau should have thought about that before diving headfirst into an adversarial process that plays out in open, public courts that are funded by the tax dollars of the American people.

*[continued …]*

# III.

# SUMMARY OF THE ARGUMENT

The "presumption of openness is Law 101" and, accordingly, the "public's right of access to judicial records is a fundamental element of the rule of law." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021). "Openness," the Fifth Circuit emphasized in its next breath, "is also Civics 101":

> The Constitution's first three words make clear that ultimate sovereignty is wielded not by government but by the governed. And because "We the People" are not meant to be bystanders, the default expectation is transparency—that what happens in the halls of government happens in public view. Americans cannot keep a watchful eye, either in capitols or in courthouses, if they are wearing blindfolds.

*Id.* (footnotes omitted).

This is why "[j]udicial records belong to the American people; they are public, not private, documents." *Id.* In rare instances, "cases involve sensitive information that, if disclosed, could endanger lives or threaten national security." *Id.* "But increasingly," the court in *Binh Hoa Le* explained, "courts are sealing documents in … cases where a party simply prefers to keep things under wraps." *Id.* (cleaned up).

This is one of those cases.

"There is a presumption that material attached to or included in a substantive filing … 'is subject to the public right of access.'" *OJ Commerce, LLC v. KidKraft,*

*Inc.*, 34 F.4th 1232, 1240 (11th Cir. 2022) (quoting *Romero v. Drummond Co.*, 480 F.3d 1234, 1245–46 (11th Cir. 2007)). This "presumption may be overcome," but only "by a showing of good cause." *OJ Commerce*, 34 F.4th at 1240 (citation and internal quotes omitted). Absent exceptional circumstances such as national security, there is never good cause to seal publicly available materials. *Id.* at 1241 (A "party should not seek to seal information that is already public[.]") (citing *Perez-Guerrero v. U.S. Att'y General*, 717 F.3d 1224, 1236 (11th Cir. 2013)).

The Fifth Circuit spoke definitively on this topic in *June Medical Services, L.L.C. v. Phillips*, 22 F.4th 512 (5th Cir. 2022), when it held that "[p]ublicly available information cannot be sealed. In so holding, we align with the Supreme Court and our sister circuits." *Id.* at 520 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984)) (collecting cases from the courts of appeals). Among the cases collected by the *June* court was *In re Violation of Rule 28(d)*, 635 F.3d 1352 (Fed. Cir. 2011), where the Court of Appeals for the Federal Circuit "sanction[ed] counsel for seeking to seal information that was publicly available." 22 F.4th at 521. If it is sanctionable for a member of the bar to even try to seal publicly available information, it certainly constitutes reversible error for a District Court to seal publicly available information.

## IV.

## ARGUMENT

### A.    Standard of Review: Abuse of Discretion.

This Court reviews a District Court's ruling on a motion to seal documents for abuse of discretion. *Vantage Health Plan, Inc. v. Willis–Knighton Med. Ctr.*, 913 F.3d 443, 450 (5th Cir. 2019). The District Court abuses its discretion when its ruling "is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Id.* (quoting *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 233 (5th Cir. 2016)).

### B.    Balancing Test and Initial Presumption.

While this Court has recognized that the decision whether to seal records is a one best left to the trial court's sound discretion, it has also cautioned that such discretion must be "exercised in light of the relevant facts and circumstances of the particular case." *Vantage Health Plan*, 913 F.3d at 450 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978)). Further, the District Court "must balance the public's common law right of access against the interests favoring nondisclosure." *Vantage Health Plan*, 913 F.3d at 450 (quoting *Sec. & Exch. Comm'n v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993)).

– 14 –

Of paramount importance to any court's analysis is the initial presumption against sealing. As this Court has recently reasoned:

> Judicial records are public records. And public records, by definition, **presume public access**. ... **The presumption of openness is Law 101. The public's right of access to judicial records is a fundamental element of the rule of law**. Openness is also Civics 101. The Constitution's first three words make clear that ultimate sovereignty is wielded not by government but by the governed. And because "We the People" are not meant to be bystanders, **the default expectation is transparency**—that what happens in the halls of government happens in public view. Americans cannot keep a watchful eye, either in capitols or in courthouses, if they are wearing blindfolds. **Providing public access to judicial records is the duty and responsibility of the Judicial Branch**.

*Binh Hoa Le v. Exeter Finance Corp.*, 990 F.3d 410, 417 (5th Cir. 2021) (emphasis added). The *Binh Hoa Le* Court went on to explain the significance of this presumption, recognizing it as foundational to the independence of the judiciary and public trust in the rule of law. *Id.* ("Article III courts are independent, and it is particularly *because* they are independent that the access presumption is so vital—it gives the federal judiciary a measure of accountability, in turn giving the public confidence in the administration of justice.") (internal quotations omitted) (emphasis in original).

In *Vantage Health Plan*, this Court again reiterated these principles and identified them as the reason that the openness presumption is foundational to the balancing test analysis:

> Undergirding balancing is **a presumption in favor of the public's common law right of access to court records**. This presumption reflects the fact that public confidence in our judicial system cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view.

*Vantage Health Plan*, 913 F.3d at 450 (emphasis added) (internal citations and quotations omitted).

### C.    *Van Waeyenberghe* and *Sealed Search Warrants:* Examples of the Two Forms of Abuse of Discretion Recognized by the Fifth Circuit.

This Court's precedent holds that a District Court abuses its discretion in sealing or unsealing records in one of two circumstances: (1) where the court fails to identify and apply the proper legal standards (*i.e.*, applies an "erroneous view of the law"); and (2) where the court fails to provide sufficient reasons for its decision to enable appellate review (*i.e.*, bases its decision on a "clearly erroneous assessment of the evidence"). *Vantage Health Plan*, 913 F.3d 443 at 450–51 (citing *United States v.*

*Sealed Search Warrants*, 868 F.3d 385, 393–95 (5th Cir. 2017) and *Van Waeyenberghe*, 990 F.2d at 848–49)).

In *Van Waeyenberghe*, the U.S. District Court for the Northern District of Texas sealed a transcript of court proceedings and a final order of permanent injunction against Howard K. Schwartz. *Van Waeyenberghe*, 990 F.2d at 847. The SEC appealed, arguing that the District Court abused its discretion in sealing the records. *Id.* This Court agreed and reversed the District Court's order, requiring that both the transcript and the final order of permanent injunction be unsealed and accessible to the public. *Id.* at 850.

In reversing the District Court's sealing order, this Court agreed with the SEC's contention that the District Court had abused its discretion by failing to weigh the relevant competing interests prior to entering the order. *Van Waeyenberghe*, 990 F.2d at 848–49. The Court explained this mandatory balancing test as follows:

> [T]he public has a common law right to inspect and copy judicial records. … Although the common law right of access to judicial records is not absolute, the district court's **discretion to seal the record of judicial proceedings is to be exercised charily**.
>
> In exercising its discretion to seal judicial records, the court **must balance** the public's common law right of access against the interests favoring nondisclosure.

– 17 –

*Van Waeyenberghe*, 990 F.2d at 848 (emphasis added).[2] This Court further reiterated that "[p]ublic access to judicial records serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness." *Id*. at 849.

The Court ultimately found "no evidence in the record that the District Court balanced the competing interests prior to sealing the final order because: (1) it made no mention of the presumption in favor of the public's access to judicial records; and (2) it did not articulate any reasons to support the sealing of the final order. *Van Waeyenberghe*, 990 F.2d at 849. The Court thus held that "[b]ecause the district court failed to balance the public's right of access to judicial records against the

---

2      Because documents filed or used in Court proceedings are generally subject to the public's right of access, this Court's balancing test to assess whether court records should be sealed is a much stricter standard to meet than the mere "good cause" standard applicable to protective order restricting access to such records in discovery under Rule 26(c). *Binh Hoa Le*, 990 F.3d at 417–18 (explaining that the "**lenient** protective-order standard" for civil discovery under FED. R. CIV. P. 26(c) is fundamentally distinct from the "**stringent** sealing-order standard" required to seal court records that have actually been introduced and used in Court) (emphasis added). Stated another way, what may be appropriately protected from disclosure during discovery for "good cause" faces much higher scrutiny to be permanently shielded from the public view after it has been introduced and used in court.

interests favoring nondisclosure, the district court abused its discretion in sealing the transcript and final order." *Id.* at 850.

This Court's second basis for recognizing abuse of discretion in sealing records comes from *Sealed Search Warrants*, which further elaborated on *Van Waeyenberghe* and its requirement that the District Court's articulate specific reasons to support sealing. There, the Government obtained and executed several pre-indictment search warrants of Appellant Justin Smith's home on the basis of sealed probable cause affidavits. *Sealed Search Warrants*, 868 F.3d at 387. Smith moved to unseal the affidavits and the District Court ultimately denied that request on the basis that it would compromise an ongoing investigation. *Id.* Smith appealed. *Id.*

This Court began its analysis by again recognizing that "[t]here is a general, common law right to inspect and copy public records and documents, including judicial records and documents[.]" *Id.* at 391. And while that right is not absolute, this Court has consistently required District Courts to engage in a case-by-case, document-by-document balancing of that common law right to access against any specific interests favoring sealing. *Id.* at 393–95 (analyzing cases and reaffirming this Court's requirement for specifically–tailored, case–by–case balancing).

The *Sealed Search Warrants* Court then found that the U.S. District Court for the Southern District of Texas abused its discretion in sealing the pre–indictment

warrants because it failed to make sufficient factual findings justifying the sealing order. *Sealed Search Warrants*, 868 F.3d at 396. Specifically, the Court relied on *Baltimore Sun Company v. Goetz* from the Fourth Circuit, which held that district courts must demonstrate the specificity of their independent review of records to be sealed by "mak[ing] findings and conclusions specific enough for appellate review." *Id.* at 397 (citing *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 66 (4th Cir. 1989)). Adopting *Baltimore Sun*'s reasoning as "consistent with the value the Fifth Circuit has placed on detailed, clear, and specific findings made by a district court in sealing or unsealing an order," this Court articulated the standard that district courts in this Circuit must follow when analyzing a motion to seal:

> [T]he requisite degree of specificity will vary from case to case, but in most cases, a district court should at least "articulate any reasons that would support sealing a judicial document," or "explain why it chose to seal a judicial document.

*Sealed Search Warrants*, 868 F.3d at 397 (citing *Van Waeyenberghe*, 990 F.2d at 849 (first quote) and *United States v. Holy Land Foundation for Relief and Development*, 624 F.3d 685, 690 (5th Cir. 2010) (second quote)).

This Court went on to describe the Southern District of Texas's findings as "bare," highlighting that the entirety of that court's balancing test analysis amounted to only a cursory statement that "there is a substantial probability that the

– 20 –

investigation will be compromised if the affidavit is unsealed." *Sealed Search Warrants*, 868 F.3d at 397. The Court then directly applied *Baltimore Sun*'s rule, holding that "[w]hile the district court need not conduct an exhaustive assessment, it must generally articulate its reasons to support sealing the affidavits with a level of detail that will allow for this Court's review." *Id.* (citing *Baltimore Sun*, 886 F.2d at 65, 66).

Thus, to summarize, there are two core principles that this Court requires District Courts to follow before entering any order sealing court records: (1) the court must correctly identify and apply the proper law, recognizing the presumption in favor of public records and only charily exercising its discretion to seal records in circumstances where the interests favoring nondisclosure outweigh the public's common law right of access in light of the unique facts and circumstances of every case; and (2) the District Court must, on a document-by-document basis, articulate any reasons that support sealing court records with findings and conclusions specific enough to allow for meaningful appellate review. *See Van Waeyenberghe*, 990 F.2d at 849–50; *Sealed Search Warrants*, 868 F.3d at 397; *Vantage Health Plan*, 913 F.3d at 450–51; *Binh Hoa Le*, 990 F.3d at 410.

## D.    Criminal Records in Civil Cases.

When it comes to the use of criminal records in civil litigation, precedent from the Supreme Court and from within this Circuit evinces a particular skepticism toward sealing requests.

The Supreme Court held more than thirty-five years ago "that Federal Rule of Evidence 609(a)(1) requires a judge to permit impeachment of a civil witness with evidence of prior felony convictions regardless of ensuant unfair prejudice to the witness or the party offering the testimony." *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 527 (1989) (citing FED. R. EVID. 609(a)(1)); *see Coursey v. Broadhurst*, 888 F.2d 338, 342 (5th Cir. 1989) (recognizing *Green* as having settled the "considerable controversy" surrounding Rule 609 and holding that "the prejudice-weighing prerequisite to admissibility of felony convictions applies only in criminal trials" but that "[i]n civil trials, Rule 609 precludes such judicial discretion; impeachment evidence of prior convictions must be admitted.").

Both the lack of judicial discretion to prohibit impeachment by evidence of prior criminal convictions, and the already-public nature of criminal records undermine any argument that such records should be sealed in the context of civil litigation. *See, e.g.*, *Ferrari v. Francis*, 685 F. Supp. 3d 410, 411 (N.D. Tex. 2023) (refusing to seal plaintiff's criminal records offered by defendants and related

briefing discussing the same after weighing the public interest against plaintiff's privacy interests and concluding that "Plaintiffs' privacy interests are insufficient to overcome the public's right to access the documents at issue," and particularly noting that such records were already publicly available from other court cases); *Armendariz v. United States*, No. MO–07–CR–180, 2012 WL 13110021, at *1 (W.D. Tex. Sept. 24, 2012) ("Movant cites no Fifth Circuit case law suggesting he maintains a fundamental right in his criminal history. Accordingly, Movant fails to meet the burden of demonstrating his interest outweighs the right of the public to access Movant's criminal records.").

In *June Medical Services, L.L.C. v. Phillips*, the United States District Court for the Middle District of Louisiana sealed or redacted multiple court records, including "a transcript of proceedings held in open court" and "an arrest report from a police department's public website[.]" 22 F.4th 512, 515 (5th Cir. 2022). This Court held that such an order was entered "without a proper legal basis" and vacated the order. *Id.*

After summarizing the two recognized categories of abuse of discretion with respect to sealing orders in the Fifth Circuit, this Court held that the District Court "failed to heed" its instructions, first by misapprehending the nature and extent of the public's right to judicial records. *June*, 22 F.4th at 519 (citing *Sealed Search*

*Warrants*, 868 F.3d at 396–97 and *Van Waeyenberghe*, 990 F.2d at 848–49). "Judicial records belong to the American people; they are public, not private documents." *June*, 22 F.4th at 519 (quoting *Binh Hoa Le*, 990 F.3d at 417). This Court emphasized that "[t]he public has an interest in transparent court proceedings that is independent of the parties' interests," *June*, 22 F.4th at 519 (quoting *In re Gee*, No. 19–30953, slip op. at 8, 2019 WL 130697384 (5th Cir. Nov. 27, 2019) (Elrod, J., concurring)), and that "serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness." *June*, 22 F.4th at 519 (quoting *BP Expl. & Prod., Inc. v. Claimant ID 100246928*, 920 F.3d 209, 210 (5th Cir. 2019)); *Holy Land Found. for Relief and Dev.*, 624 F.3d at 690 (same). "Accordingly, [this Court] **heavily disfavor[s]** sealing information placed in the judicial record." *June*, 22 F.4th at 519–20 (emphasis added) (citing *Vantage Health Plan*, 913 F.3d at 450–51).

The rationale supporting public access to judicial records is "even greater" (and thus presents an even higher bar in the balancing of relative interests) where the case involves matters of particular interest. *June*, 22 F.4th at 520 (quoting *Shane Grp. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) ("[T]he greater the public interest in the litigation's subject matter, the greater the showing

necessary to overcome the presumption of access."). Accordingly, this Court

cautioned as follows:

> **In the context of publicly available documents, those already belong to the people, and a judge cannot seal public documents merely because a party seeks to add them to the judicial record**. We require information that would normally be private to become public by entering the judicial record. How perverse it would be to say that what was once public must become private—simply because it was placed in the courts that belong to the public. **We will abide no such absurdity.**
>
> **Publicly available information cannot be sealed**. In so holding, we align with the Supreme Court and our sister circuits.

*June*, 22 F.4th at 520–21 (italics in original; additional emphasis added) (collecting

cases) (internal citations omitted).[3] Accordingly, this Court held that the District

Court's sealing order—including the sealing of criminal arrest records available

online—was impermissible, and it vacated the order. *Id.* at 521.

[*continued …*]

---

[3] When counsel for Vendera recently asked Juneau's attorney for authority supporting her opposition to citing government-maintained records in this brief obtained from Freedom of Information Act requests without placing such information in the brief under seal, counsel Juneau declined to cite any such authority but insisted on maintaining her opposition anyway.

## E.   Specific Sealing Issue on Cross-Appeal.

The District Court erred in granting Plaintiff's motion to file briefing and records under seal related to Mr. Juneau's mental capacity and prior criminal history.

First, there is no indication on the record that the District Court properly applied, or even considered, this Court's mandatory balancing test.

During a June 16, 2025, discovery and motion hearing, the Court initially acknowledged that "other public documents, you know, that are just indicating what the criminal history is or how they've been resolved by courts" are already in the public domain and asked counsel for Appellant, "[i]f that's public, it's public, right?" ROA.1147 (Tr. at 36:20–23). And when counsel for Appellee reminded the Court that he was "trying to be sensitive to the fact that courts are supposed to be open" in opposing the sealing request, the Court acknowledged, "I know. I know." ROA.1148 (Tr. at 37:10–12). Yet the Court then went on to summarily grant the Motion for Leave to File the Response Under Seal, including any attachments to that Response, without offering any analysis for that decision and without referencing any of this Court's controlling precedent on sealing, or its "heavy disfavor" for sealing any judicial records, including party briefing and exhibits. *See Van Waeyenberghe*, 990 F.2d at 849–50; *Sealed Search Warrants*, 868 F.3d at 397; *Vantage Health Plan*, 913

F.3d at 450–51; *Binh Hoa Le*, 990 F.3d at 410; *June Med. Servs.*, 22 F.4th at 520–21. The Court simply stated that a written order would follow.

In the Court's minute entry, entered the same day, the Court did not offer any further analysis, but simply stated that it "**addressed** the Motions by Plaintiff to strike a motion filed by Defendants with respect to mental competency of Jacob Juneau and to file under seal the response and move other items under seal" and that "[t]he motion to file under seal and for related relief was GRANTED for the reasons stated on the record. A separate order will be entered to place the subject filings under seal." ROA.1082 (Doc. 109 at 2: Minute Entry) (emphasis added). But, as shown above, the Court gave no specific "reasons stated on the record" at the June 16 hearing and it certainly did not cite or provide any analysis of the relevant case law or balancing test. And finally, the Court's separate Order of June 16, 2025, merely states: "The Court has determined that filings with respect to the mental health and competency of Jacob Juneau should be maintained under seal" without providing any analysis at all. ROA.1085 (Doc. 110: Order).

Even had the Court properly considered the balancing test, however, Appellant failed to overcome the presumption of openness by providing any evidence to demonstrate that he has a substantial privacy interest in his publicly-available criminal records strong enough to defeat the presumption. This Court has

– 27 –

firmly disapproved of the sealing of public records, including to state in a recent opinion that it will "abide no such absurdity." *June*, 22 F.4th at 520–21.

Just as in *Van Waeyenberghe*, the District Court's statements on the record at the hearing, its Minute Entry, and its separately entered Order sealing Docket Nos. 78-84 and 91-93 contain no reference to any guiding law or standards. Thus, the District Court erred by violating this Court's first rule for sealing court records when it failed to correctly identify and apply the proper law by recognizing the presumption in favor of public records and only charily exercising its discretion to seal records in circumstances where the interests favoring nondisclosure outweigh the public's common law right of access in light of the unique facts and circumstances of this specific case. *See Van Waeyenberghe*, 990 F.2d at 849–50; *Vantage Health Plan*, 913 F.3d at 450–51.

Second, there is also no indication on the record of the Court making any specific findings or conclusions (or, indeed, any findings and conclusions at all) with respect to the records to be sealed, and the record certainly reveals no document-by-document, articulated reasons for sealing court records sufficient to allow for meaningful appellate review of the District Court's decision. *See Sealed Search Warrants*, 868 F.3d at 397; *Vantage Health Plan*, 913 F.3d at 450–51. Again, the hearing transcript, Minute Entry, and Order contain no analysis, no citation to case

law, and no findings or conclusions to explain to this Court why the District Court chose to grant the sealing motion and seal the filings located at docket numbers 78-84 and 91-93. *See* ROA.1112–54 (June 16, 2025, transcript); ROA.1081–84 (Doc. 109 at 2: Minute Entry); ROA.1085 (Doc. 110: Order)

Just as in *Sealed Search Warrants*, the District Court made only cursory statements in its Minute Entry and Order about *what* it determined to seal, without offering any reasoned analysis as to *why* it determined to do so. *See Sealed Search Warrants*, 868 F.3d at 397. Thus, the District Court erred by violating this Court's second rule for sealing court records when it failed to conduct any document-by-document analysis and failed to make any specific findings of fact or conclusions of law sufficient to provide for meaningful appellate review. *Sealed Search Warrants*, 868 F.3d at 397; *Vantage Health Plan*, 913 F.3d at 450–51.

[*continued …*]

# V.

# <u>CONCLUSION</u>

For the foregoing reasons, Vendera respectfully requests that this Court:

&#9312;    affirm the District Court's dismissal of Juneau's claims; and

&#9313;    vacate and reverse the District Court's sealing order; or, alternatively

&#9314;    vacate and remand this case to the District Court with instructions to perform a document-by-document sealing analysis consistent with (1) this Court's opinion herein, with (2) its prior opinions discussed herein, and with (3) instructions that public records of the type discussed herein (unsealed records from other courts and criminal records obtained through open records requests or from official government websites) cannot, as a matter of law, be properly sealed.

DATED: February 2, 2026

Respectfully submitted,

By: */s/ Thomas G. Ciarlone, Jr.*

THOMAS G. CIARLONE, JR.
TEXAS BAR NO. 24075649
E-MAIL | *tciarlone@krcl.com*

DEMETRI J. ECONOMOU
TEXAS BAR NO. 24078461
E-MAIL | *deconomou@krcl.com*

DREW ROBERTSON
TEXAS BAR NO. 24090845
E-MAIL | *drobertson@krcl.com*

KANE RUSSELL COLEMAN LOGAN PC
5151 San Felipe, Suite 800
Houston, Texas 77056
DIRECT | 713 425.7428
FACSIMILE | 713 425.7700

***Attorneys for Defendants—Appellees
VR4-Moria, LP and Vendera Management
Holdings, LLC d/b/a Vendera Resources***

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,438 words.

I certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document was prepared in a proportionally spaced typeface using Microsoft Word 365 in the 14-point Equity type style.

*/s/ Thomas G. Ciarlone, Jr.*

Thomas G. Ciarlone, Jr.

## **CERTIFICATE OF SERVICE**

I certify that on February 2, 2026, I filed the foregoing document with the Clerk of the United States Court of Appeals for the Fifth Circuit, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to such Notice as service of the document by electronic means, including the following:

| **Attorneys for Plaintiff-Appellant The Juneau Group, LLC:** | **Attorneys for Defendant-Appellee BOKF, NA:** |
|---|---|
| Susan J. Clouthier<br>CLOUTHIER LAW, PLLC | David W. Leimbach<br>Jared M. Burden<br>Patrick Sandman<br>FREDERIC DORWART,<br>LAWYERS PLLC |

/s/ Thomas G. Ciarlone, Jr.

**THOMAS G. CIARLONE, JR.**